Good morning. I'm Alan Harris on behalf of the plaintiffs, along with Priya Mohan. This is an appeal from denial of class certification. There was no question in the denial regarding commonality or typicality. There was no question regarding the adequacy of the proposed class representatives, and there was no question regarding the adequacy of proposed class counsel. The court instead declined to certify the case based on alleged lack of superiority due to the misperception, I believe, that there were other cases pending. There was only one other case pending, which was not a class action. That is the case which was brought by my office on behalf of a fire safety officer. But did the court also say that there was not sufficient numerosity? Yes, sir, and I'll get to that in a minute. Well, I'll do that right now. All right, so let's see whether we can talk about that. Sure, certainly. Yeah, if I may. Yes. No, no, I'm sorry. Okay. Yeah, I want to get right to that because I'm troubled by that. In your brief, you point out that there are 100 situations, at least 100 situations, which ultimately would qualify for numerosity, but you basically have talked about 40 or 50 of these, I guess, during the course of the proceedings below. So there's sort of a dichotomy between these two, you know, numerical numbers. But I think the focus for me, which I want you to explain, is if the waivers happen before payment, then I guess that would be void. If they happen after payment, then these waivers would be valid, correct? Well, there's no evidence of any waivers whatsoever other than a declaration that doesn't address when the alleged waivers were entered. So Geisler, in his affidavit, says by December 2010 and January 2011, the vast majority of individual Los Angeles cast and crew members were paid in full for wages, meal penalties, contributions, and benefits. And then in the next paragraph, paragraph 7, Geisler says, in 2011, the vast majority of cast and crew from the Los Angeles shoot signed releases of liability as the GS Entertainment LLC and asked to meet personally, releasing us from any liability for any late payment of wages and benefits. So, you know, you can perhaps call from that that the waivers happened arguably afterwards. Now, I know that it's not precisely telling me who was involved, who made waivers, and all of that. But the fact that we had this affidavit submitted here, wasn't it incumbent upon you to come back and say, no, this is not true, point out some evidence that these waivers were invalid because they happened before? But there's nothing in here that tells me that you challenged that affidavit. Well, there were, first of all, that affidavit I think is challenged by the agreements with the unions, which cover only a portion of the over 100 people. And to fully answer your question, let me point out that we did have in the record the email which is dated October 15, 2010, from GS Entertainment. This is in our appendix at page 2 of volume 2, in page 139 of volume 2. It's to over 100 people in October. You weren't arguing to the district court about 100 people. Your papers, the district court kept talking about 40 and over 40. You're trying to recast the case on appeal, but I'm not surprised the district court recites that you argued for 40 or 50 because when I went back and looked at your papers, you had argued for 40 or 50, not for 100. But we included both with the declaration. Well, you stuck a lot of papers in, but your papers, the things that you would expect the district court to start with, says 40. So why should the district court decide to do the work for you and come up with 100 names? Well, precisely the declarations say over 40 or 50, and then they attach. And now you're trying to argue to us, but it's really 100. So if some get called out by having signed releases, you've still got a big number. But the case you presented to the district court in which the district court ruled started with the number 40. So I'm not surprised the district court started with the number 40. Well, it said over 40 or 50. Well, I said, see, the proposed class consists of over 40 individuals across. Yes, over 40. But the point is the evidence clearly showed that it was over 100. So why does the district court have the responsibility of going to the work that should have been yours? If you wanted to argue 100, you should have said 100. You said 40. So the district court starts with 40. Well, we believe, Your Honor, that over 40 is sufficient to grant certification. And putting forth the evidence supported by the call sheets, which show over 100, and the e-mail apologizing to the crew, saying we're sorry we paid you late. I still don't see any evidence here that tells me whether these waivers happened before or after. I just don't see it. Correct, Your Honor. Your Honor, the point is if they happened after, there would be no consideration for them. If they happened before, they're improper under 206. But I don't see which ones happened before and which happened afterwards. I don't believe there we never had any evidence in the court below of any waivers whatsoever, other than the unsupported naked declaration of the producer who was financially responsible. Which I just read to you. But you have a burden and a responsibility here. You want class certification. Don't you have to submit something in opposition to Geisler's affidavit to say that, you know, there are waivers that happened here before and not afterwards? One person come forward, do something? But, Your Honor, there were no waivers. I don't know. I mean, I think it's your burden to tell me one way or the other. You want class certification. Correct, Your Honor. And what we did argue to the court, which I think is adequate, was that if they were before, they were invalid under 206.5. And if they're after, there's no consideration. But I don't know out of the 40, 50 or 100 how it lines up. I have no evidence of that here. I understand, Your Honor. Assume, arguendo, that 100 percent of the people signed waivers. If they signed them before, they're invalid under 206. I just don't know. Whether they, Your Honor, whether they signed them before or after, they cannot waive the penalties that we're seeking certification of, because under 206, you cannot sign a waiver in order to get paid. And if they signed them afterward, there was no consideration for the waivers. Basically saying it's an unreleasable claim. Not unreleasable, in the absence of consideration. Money is turned over? I'm sorry? You said before it doesn't count and after it doesn't count. When does it count? It counts afterwards if you get consideration. But we don't know if they did or not, because you didn't present any evidence. I mean, the declaration attaches a purported form of release and says, for such and such consideration, we release the claim. So we don't really know what that means, because the plaintiff didn't put on any evidence. But, Your Honor, there were no signed releases. But there's evidence, which a declaration, an affidavit is evidence. There's evidence that the majority, I think he says the vast majority, of the individuals signed releases. That's the evidence in the record. And there's no countervailing evidence. But I think to countervail that, Your Honor, is the legal problem that defense fails. Okay, you agree. There's no countervailing evidence to the Geisler Declaration. And your argument is, but there's no evidence in the record as to when those releases occurred, which is true. But it's the plaintiff's burden to show that the class is appropriate for certification. And so it would be the plaintiff's burden to show that the vast majority of those vast majority of releases happened before payments were made. I didn't see any evidence in the record to that effect. Was there any? I don't believe so, Your Honor. But if they were, it's clear if they were signed before, they're unenforceable. And I think it's clear that if they were signed after, they're unenforceable. I don't see why it's clear. You just said you think there was no consideration. But the form of release that he attaches as an exhibit states that there's consideration. So I don't see why that's, why it's clear. Payment of the wages cannot. He doesn't say that's payment of the wages in the declaration. It just says for such and such amount of consideration. It doesn't say that's wages. Well, if he doesn't articulate that there's any consideration, Your Honor. He articulates there is consideration. He says for sole consideration of X paid to Y, you know, blank, paid to blank, release or, I hereby release Geisler et al. That's all that his blank example individual release form says. So there's no evidence of any consideration whatsoever other than his statement that the consideration was the wages. And I'm going to make one final effort that I'd urge you to consider. Could any class action be defeated? In the central district, we have virtually no opportunity to engage in discovery prior to the filing of the class certification. So in any class action, they could get a declaration from someone saying there have been releases and offer no other evidence of who released, how much they paid, or when they paid. But you have control over that. You have the knowledge of that. You could have submitted something by one person in any event. Well, Your Honor, obviously neither of the two plaintiffs were offered wages or signed releases. And in any class action, you could defeat it by simply saying, oh, the majority have released it without offering any evidence of all of who released it, when it was released, or how much it was released. Your Honor, just out of curiosity, doesn't that have anything to do with the merits? Do you have any idea why it is you have no adversary here today? There's something that suggests that he no longer is the lawyer. I'm just curious as to what the representational status is of your adversary. He told me he – well, I – You don't know. You don't know or don't know anything you can say. Well, he told me that he felt uncomfortable. He'd never argued in the court of appeal and didn't care to do so. We don't bite. I'm sorry? We don't bite. No, I mean – I'm not saying you had that attitude. We need to let him know someday that we don't bite. Oh, I understand your comment. I'm not going to put him as a Brooklyn judge here. That would scare anyone. Well, in any event, I truly wish you would reconsider this because the level of evidence here I don't think reaches plausibility to permit a defendant to get off the hook on a case without submitting anything other than a naked declaration saying ultimately the wages were paid and the people released their claims. In the central district, we have to file these motions within 90 days of filing the case. And the local rules have elaborate procedures. You can't even begin discovery until the Rule 26 conference. And so if we serve interrogatories and do the rest, it's impossible to get discovery of all these issues prior to the time when the class certification process begins. Don't start a new sentence. I think we have your position. You're well over time. Thank you for the argument. The case just argued is submitted. We'll take a brief recess. Thank you very much.
judges: Clifton, Ikuta, Block